BENVENUTTI, DEMANDANTE Y APELANTE, *v.* VÁZQUEZ Y NERI, DEMANDADOS Y APELADOS.

APELACIÓN procedente de la Corte de Distrito de Mayagüez en pleito sobre nulidad y otros extremos.

No. 1908.—Resuelto en febrero 26, 1920.

PROCEDIMIENTO EJECUTIVO HIPOTECARIO — JUEZ COMPETENTE PARA CONOCER DEL PROCEDIMIENTO.—Si el pueblo en que radican los bienes objeto de un procedimiento ejecutivo hipotecario pasa a formar parte de otro distrito judicial, a la corte de este distrito corresponde seguir conociendo de dicho procedimiento de conformidad con el artículo 170, párrafo 3º., del Reglamento para la ejecución de la Ley Hipotecaria.

TERCERO — DEFECTOS DEL TÍTULO QUE NO CONSTAN DEL REGISTRO. — Aunque sea nula la cancelación de los plazos de una hipoteca posteriores al ejecutado, por no haberse prorrateado el precio de la subasta entre todos los plazos pendientes ni haberse consignado la parte proporcional correspondiente a dichos plazos posteriores, esa nulidad no puede afectar a quien compra después de verificada la cancelación de tales plazos, cuando no consta de la inscripción que dejara de consignarse o de pagarse la parte pro-

porcional correspondiente a los plazos·cancelados. Para que la nulidad del título perjudique al tercero que inscribió su derecho, la causa de nulidad debe aparecer cláramente del registro.

Los hechos están expresados en la opinión.

Abogado del apelante: *Sr. J. Tous Soto.*

Abogados de los apelados: *Sres. Benet y Souffront.*

EL JUEZ ASOCIADO SR. ALDREY, emitió la opinión del tribunal.

En 15 de enero de 1896 don Pablo Coronado hipotecó tres fincas a don Tomás Benvenutti para garantizarle el pago de seis mil pesos de la moneda entonces circulante que le pagaría en seis anualidades. Esas fincas las inscribió después Coronado como una sola de 29 cuerdas en el registro de la propiedad y entonces el acreedor Benvenutti hizo inscribir su hipoteca en la finca agrupada.

Pagó el deudor los dos primeros plazos y habiendo el acreedor cedido a don Luis Campillo y éste a don Fernando Vázquez la mitad del tercer plazo correspondiente a 1898, equivalente aquella a trescientos dólares, el cesionario Vázquez presentó en 1902 demanda ejecutiva para su cobro por el procedimiento hipotecario en la Corte de Distrito de Mayagüez a cuya demarcación correspondía entonces el pueblo de Las Marías donde la finca radica. El acreedor por los plazos posteriores Benvenutti fué notificado del auto que ordenó el requerimiento de pago al deudor y se anunció por dos veces la subasta de la finca sin que hubieran licitadores. En junio de 1904 pidió Vázquez que se verificara una tercera subasta pero el procedimiento quedó entonces paralizado.

En julio de 1904 el pueblo de Las Marías pasó a formar parte del Distrito Judicial de Aguadilla y en 25 de enero de 1905, estando los autos expresados en esta corte de distrito, pidió Vázquez otra vez la subasta de la finca. El Secretario de dicha corte libró mandamiento al márshal para la subasta haciendo constar en él que así se había dispuesto. En esa subasta fué adjudicada la finca al acreedor por su acreencia y las costas, ascendente todo a $581.10 dólares. Por

ley de 9 de marzo de 1905 volvió el pueblo de Las Marías a ser incorporado al distrito judicial de Mayagüez ante cuya corte de distrito compareció Vázquez en 23 de abril de 1906 pidiendo que se ordenase la cancelación de los plazos posteriores de la hipoteca, moción que fué notificada a don Tomás Benvenutti y que el juez, después de diversas consideraciones rehusó tomar en consideración en 7 de mayo de 1906 y se abstuvo de hacer pronunciamiento interin no se acreditase con el documento correspondiente la realidad de la venta de la finca hipotecada.  Días después presentó Vázquez en dicha corte la escritura de venta que le otorgó el márshal de distrito de Aguadilla el 23 de mayo de 1906 en la que hac'a constar que la finca fué adjudicada a Vázquez el 9 de marzo de 1905, habiendo transcurrido doce meses sin que fuera redimida, y la acompañó con moción reproduciendo su anterior solicitud.  Fué resuelta en 31 de mayo de 1906 ordenando la corte la cancelación de dichos plazos y de. los gravámenes posteriores por no haber alcanzado el valor de la finca adjudicada a cubrir más del crédito reclamado.  Librado mandamiento por el secretario al registrador para que verificase las cancelaciones decretadas, acompañado de certificación de que la resolución era firme, las cancelaciones fueron hechas en el registro el 20 de julio de 1906.  Después de todo esto, en 29 de diciembre del mismo año compró. don Felipe Nery Quiñones dicha finca a Vázquez, se inscribió su título en el registro el 14 de enero de 1907 y en 1912 pagó a don Tomás Benvenutti la otra mitad que no había sido cancelada del plazo de 1898.

En 27 de agosto de 1915 don Tomás Benvenutti cedió los plazos posteriores al ejecutado a don Juan Benvenutti, quien presentó en noviembre de 1916 demanda en la Corte de Distrito de Mayagüez contra Vázquez y contra Nery Quiñones en la que interesó se declarase la nulidad de las subasta de la finca y de la orden de cancelación de los plazos posteriores · al ejecutado; pleito que terminó por sentencia que declaró sin lugar esas peticiones y contra la cual el de-

mandante interpuso el presente recurso de apelación en el
que sostiene la procedencia de sus pretensiones.

Alega el apelante que la Corte de Distrito de Aguadilla
carecía de jurisdicción y competencia para decretar la ter-
cera subasta que originó la venta de la finca porque iniciado
el pleito en Mayagüez allí debió continuar y porque no existe
orden que lo trasladara a Aguadilla.

Si bien el procedimiento comenzó en Mayagüez porque a
su demarcación judicial correspondía el pueblo de Las Ma-
rías donde la finca agrupada radica, habiendo pasado luego
este pueblo a formar parte del distrito judicial de Aguadilla,
a la corte de este distrito correspondía seguir conociendo de
este asunto, aunque nada dispuso la ley de reorganización
de los tribunales sobre ese particular, porque el artículo 170,
párrafo tercero del reglamento para la ejecución de la Ley
Hipotecaria dispone que será juez competente en asuntos
como el que nos ocupa el del lugar en que radican los bienes
hipotecados, sin que se admita sumisión en contrario; tras-
lado que pudo hacer la corte de Mayagüez *motu propio.* No
consta en los autos la orden de traslado, pero esto no de-
muestra por sí sólo que la orden no existiera teniendo en
cuenta el hecho del traslado y que desde julio de 1904 en que
empezó a regir el Código de Enjuiciamiento Civil, las órde-
nes y resoluciones se hacían constar en los libros de minu-
tas de la corte y que generalmente no se llevaban a los au-
tos, lo que dió lugar a que en 1906 la Legislatura ordenase
que el secretario llevase a ellos certificación de las resolu-
ciones que se insertaban en el libro de minutas.

Alega también el apelante como vicio de nulidad que las
tres fincas hipotecadas se vendieron conjuntamente.

Como las tres fincas hipotecadas por el deudor fueron
inscritas como una sola finca en el registro de la propiedad,
hecho conocido por don Tomás Benvenutti quien hizo ins-
cribir su hipoteca en la finca agrupada, no vemos que exista
nulidad porque el márshal vendiera la finca como constaba
inscrita en el registro, pues de acuerdo con éste había de

otorgar el título de propiedad. Además, no se ha alegado ni probado perjuicio para el apelante por haberse verificado la venta en esa forma.

Se queja el apelante de que la subasta se verificó sin sujeción a tipo. Así procedía hacerla de acuerdo con el Código de Enjuiciamiento Civil vigente cuando la subasta tuvo lugar sin que el hecho de que se ejecutase la mitad de un plazo pudiese alterar esa regla.

· Sostiene también el apelante como vicio de nulidad que no fué notificado de que se iba a celebrar dicha subasta. Sin embargo esto no era necesario porque él tenía conocimiento de que Vázquez había establecido procedimiento ejecutivo hipotecario para el cobro de su acreencia, pues fué notificado del auto requiriendo de pago al deudor, y sabía què si dentro de treinta días no era satisfecho el crédito de Vázquez se verificaría la subasta de los bienes hipotecados.

En el procedimiento ejecutivo no se hallan las diligencias practicadas por el márshal con respecto al anuncio de la subasta, quizás por la razón de que entonces no se hacía un solo expediente con todas las actuaciones, pero como el márshal hace constar en el acta de remate que se publicaron edictos anunciando la venta en el periódico "La Bandera Americana" y también el registrador hizo constar al inscribir la venta a favor de Vázquez que los edictos fueron debidamente publicados, debemos suponer que en efecto fueron publicados y, por tanto, no es sostenible la alegación de nulidad que por ese motivo hace al apelante.

El segundo motivo del recurso se refiere a la cancelación de los plazos pertenecientes a Benvenutti, posteriores al ejecutado.

Como el precio de la venta no alcanzó a cubrir los plazos posteriores al ejecutado el juez ordenó la cancelación de ellos fundándose en una resolución de la Dirección General de Gracia y Justicia del Ministerio de Ultramar de 10 de enero de 1889 que declaró pertinente la cancelación en un caso como el presente, pero cuando posteriormente esta cues-

tión fué presentada a este Tribunal Supremo en los casos de American Trading Co. contra Monserrat y contra Quevedo, 19 D. P. R. 978 y 998, declaramos que en tales casos debe prorratearse el precio del remate entre el plazo ejecutado y los posteriores de la misma hipoteca o consignarse la parte a ellos correspondiente para que puedan cancelarse.

Como los plazos posteriores al ejecutado estaban cancelados en el registro de la propiedad cuando el apelado Nery Quiñones compró la finca en diciembre de 1906 surge la cuestión de si siendo nula esa orden de cancelación afecta a dicho comprador.

Según el artículo 33 de la Ley Hipotecaria, la inscripción en el registro no convalida los actos o contratos que sean nulos con arreglo a las leyes; pero dispone el 34 que, no obstante lo declarado en el artículo anterior, los actos o contratos que se ejecuten u otorguen por persona que en el registro aparezca con derecho para ello, no se invalidarán en cuanto a tercero, una vez inscritos, aunque después se anule o resuelva el derecho del otorgante en virtud del título anterior no inscrito o de causas que no resulten claramente del mismo registro.

Como consecuencia de esos preceptos la cuestión que tenemos que considerar ahora es si Nery Quiñones tiene el concepto de tercero a quien no puede perjudicar una cancelación indebida de los plazos posteriores al ejecutado por Vázquez porque del registro no resultaba claramente que fuera nula la orden de cancelación.

Cuando compró Nery Quiñones la finca constaba en el registro que la cancelación se había ordenado porque el precio del remate no alcanzó a cubrir los plazos posteriores de la misma hipoteca. No aparece de él que el precio de la venta fuera prorrateado con los plazos posteriores pendientes ni que se hubiera consignado la parte proporcional a ellos correspondiente, pero como cuando alguna de estas dos cosas se hacen es procedente la cancelación si el precio de la venta no alcanza a cubrir el importe de los plazos posteriores, tenía

derecho el comprador a suponer que se había cumplido la ley y que cuando el juez ordenó la cancelación se había prorrateado el precio o se había consignado la parte proporcional a ellos correspondiente; y como no consta del registro que dejara de pagarse o de consignarse la parte proporcional correspondiente a los plazos cancelados, no podemos declarar que del registro resultaba claramente la nulidad de dicha orden para que el comprador pierda su condición de tercero y le perjudique la causa de nulidad de dicha orden.

Tampoco resulta del registro que Benvenutti, acreedor por los plazos posteriores, no fuera oido para decretar la cancelación de sus plazos y si es que no fué oido, esto no puede perjudicar al comprador Nery Quiñones.

Por las razones expuestas la sentencia apelada debe ser confirmada.

*Confirmada la sentencia apelada.*

Jueces concurrentes: Sres. Presidente Hernández y Asociados Wolf, del Toro, y Hutchison.